1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHANNA M. IMMELT,

                     Plaintiff,

     v.

DEE SHARP and TAMBRA
MCCOWAN,

                   Defendants.

CASE NO. C20-5617 BHS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

THIS MATTER is before the Court on pro se Plaintiff Johanna Immelt's Motion

for Summary Judgment, [1] Dkt. 18, and Immelt's Motion to Seal, Dkt. 20. Immelt is a

Washington State registered "trainee" real estate appraiser, seeking to become fully

licensed. Defendants Dee Sharp (Program Director) and Tambra McCowan (Professional

Licensing Manager) are employed by the Washington State Department of Licensing's

("DOL") Real Estate Appraiser Program, charged with overseeing appraiser licensing. In

---

[1] Defendants' Response to the Motion, Dkt. 23, argues that Immelt's claims are fatally flawed but does not affirmatively seek Summary Judgment. Defendants' recent Motion for Summary Judgment, Dkt. 32, is based largely on these same arguments. It will be addressed in a separate Order.

March 2020, the DOL rejected Immelt's application to sit for the Appraiser Examination, determining that she had not logged the State-mandated 2000 hours of appraisal experience in the prior seven years.

Immelt sued the DOL Appraiser Program[2] and the individual employees, alleging that Washington's regulatory scheme regarding such licensing is unconstitutionally vague on its face, and as applied to her. She asserts claims under 42 U.S.C. § 1983, seeking a judgment requiring defendants to permit her to sit for the examination and $300,000 in lost income damages. Dkt. 6 at 9.

Immelt seeks judgment as a matter of law that Washington's appraiser examination regulatory scheme is unconstitutional. Dkt. 18. Sharp and McCowan argue that the regulation is constitutional on its face and as applied to Immelt. Dkt. 24. They argue that to the extent Immelt sues them in their official capacities, they are entitled to Eleventh Amendment immunity, and that any claims for damages against them personally are barred by qualified immunity.

## I.   BACKGROUND

Washington State real estate appraiser licensing is regulated under Washington Administrative Code ("WAC") Chapter 308-125. Among other requirements, a trainee appraiser seeking to sit for the licensing examination must document 2000 hours of prior appraisal experience in a "log," accumulated within seven years of the application. WAC 308-125-070(1). The regulations restrict the maximum hourly credit for a list of various

---

[2] Immelt's claims against the Appraisal Program itself have been dismissed with prejudice. Dkt. 5.

kinds of appraisals, including a maximum of twelve hours for a "form report" single

family residential appraisal. WAC 308-125-075(1)(b). A sort of "catch-all" provision

provides that DOL will evaluate on a case-by-case basis experience not specifically listed

in the regulation: "Experience credits for appraisal experience not listed in subsections

(1), (2), or (3) shall be determined by the department on a case-by-case basis." WAC

308-125-075(4).

The material facts are not disputed. Immelt asserts that she got her Trainee License

in 2006 and that she has been appraising for more than 20 years. She claims to have more

than 4000 hours of applicable experience over time. Immelt alleges that DOL accepted

her hours and her application when she first applied to take the appraiser exam in April

2008, and again when she applied in October 2014. Dkt. 18 at 3. Immelt apparently did

not take the examination on the prior occasions.

In June 2019, Immelt applied again to take the Real Estate Appraiser's

Examination. She submitted her experience log with her application and supplemented

her log on December 31, 2019. On January 22, 2020, Defendant McCowan wrote to

Immelt explaining the deficiencies in her log (she was 66 hours short of 2000) and

extended the time for filing a complete log to February 14, 2020. Dkt. 18-3 at 12, Ex. D.

Immelt testifies that she spoke to McCowan on the phone, and McCowan told her she

couldn't give more credit than what is allowed in the WAC. Dkt. 18 at 3. Immelt asserts

that DOL and Defendants rejected her application to sit for the exam because she had not

met the 2000 hours in the last seven years requirement. *Id*. (citing Dkt. 18-3 at 17, Ex. F).

1   Immelt continued to try to persuade McCowan and DOL that some of the

2   residential appraisals she had worked on were not run-of-the-mill homes or appraisals.

3   One was a rare, "Grade 20—Exceptional" property; an estate assembled and renovated

4   by an unnamed individual at a cost of something more than $150,000,000. *See*

5   Declaration of Jay Immelt, Dkt. 18-2 at 3.[3] Immelt's chief complaint is that DOL and

6   Defendants refused to credit her more than the WAC standard 12 hours for the work she

7   did on that appraisal. Appraiser Jay Immelt[4] asserts that 80 hours is a reasonable request

8   for credit for that work. *Id.*

9   Immelt also alleges that DOL and Defendants failed to properly credit seven

10   residential "Real Estate Owned" ("REO") appraisals she did for lending institutions,

11   valuing properties owned by the banks after foreclosure. She argues that each of those

12   more complex appraisals should have been eligible for credit beyond the twelve hours

13   permitted under the WAC. Dkt. 18 at 9.

14   Immelt's efforts were not successful and on March 23, 2020, Defendants rejected

15   her application because she had not logged 2000 hours of creditable appraisal experience

16   in the prior seven years, as required by WAC 308-125-070(1). *Id.* at 3.

17   She sued, alleging that WAC 308-125-075, governing how much credit toward the

18   2000 requirement an Appraisal Trainee can earn for work on various types of appraisals,

19

20   [3] Immelt's Motion to Seal, Dkt. 20, asks the Court to seal this Declaration in the privacy interest of the third party who owns the Grade 20 Property. That Motion is unopposed, and it is **GRANTED**. Dkt. 18-2 shall be filed under seal.

21   [4] Jay Immelt is a licensed appraiser and apparently Johanna Immelt's relative. His testimony is offered as expert testimony on the time Immelt spent appraising the Grade 20

22   property.

is unconstitutionally vague on its face and as applied to her case. She argues that Sharp and McCowan violated her constitutionally protected right to a vocation of her choosing when they adhered to WAC 308-125-075's maximum credit per appraisal and refused to extend her additional credit for work on the Grade 20 Property and the seven REO properties.

Immelt also challenges WAC 308-125-070's 2000-hour requirement itself, arguing that it is more restrictive than its federal counterpart, which requires only 1000 hours of relevant experience with no time limitation. Dkt. 18 at 5–6 (citing Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA")).[5] Immelt provides no citation for this federal requirement, or for her apparent claim that it effectively preempts any more stringent state regulation requiring more hours or imposing a time limit.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986);

---

[5] The portion of FIRREA that applies to appraisal is Chapter 34A, Pub. L. 101-73, codified at 12 U.S.C. § 3331 *et seq*.

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

exists where there is sufficient evidence for a reasonable factfinder to find for the

nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party

bears the initial burden of showing that there is no evidence which supports an element

essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the movant has met this burden, the nonmoving party then must show that there is a

genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

establish the existence of a genuine issue of material fact, "the moving party is entitled to

judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that

the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife

Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-

movant must then produce concrete evidence, without merely relying on allegations in

the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248

(1986).

**B.    WAC 308-125-075(4)'s "catch-all" provision is not unconstitutionally vague.**

    Immelt first claims that WAC 308-125-075(4) is unconstitutionally vague on its

face because its "catch-all" provision includes no standards for evaluating, on a case-by-

case basis, appraisal experience which is not specifically covered elsewhere in the

regulation.

1    Defendants correctly point out that the "void for vagueness" doctrine arises almost

2  exclusively in the context of criminal or other statutes prohibiting conduct. Dkt. 24 at 6

3  (citing *Koelender v. Lawson*, 461 U.S. 352, 357–58 (1983)). An ordinance may

4  be facially unconstitutional in one of two ways: "either it is unconstitutional in every

5  conceivable application, or it seeks to prohibit such a broad range of protected conduct

6  that it is unconstitutionally overbroad." *Foti v. City of Menlo Park*, 146 F.3d 629, 635

7  (9th Cir. 1998) (internal quotations omitted).

8    WAC 308-125-075(4) does not prohibit anything. It simply and clearly provides

9  that DOL will evaluate on a case-by-case basis any relevant appraisal experience not

10  addressed in the 36 specifically enumerated kinds of appraisal experience outlined in

11  WAC 308-125-075(1)–(3).

12    To establish facial unconstitutionality, Immelt must demonstrate that WAC 308-

13  125-075(4)'s "cases by case" evaluation of experience cannot be constitutionally applied

14  in any case. She makes no effort to do so. Instead, she repeatedly argues that the Grade

15  20—Exceptional property appraisal that she worked on was unusually, perhaps uniquely,

16  complex and sophisticated. She asserts that Defendants were constitutionally required to

17  give her additional credit for that work, under the very catch-all provision she attacks as

18  void for vagueness.

19    That is not a facial challenge to the regulation; it is a claim that the regulation's

20  catch-all provision should have been applied differently. Immelt's Motion for Summary

21  Judgment on her claim that Washington's appraiser licensing regulatory scheme is

22  unconstitutionally vague on its face is **DENIED**.

1   **C.    WAC 308-125-070's 2000-hour requirement is not unconstitutional.**

2           Immelt also argues that Washington's appraiser licensing regulatory scheme is

3   unconstitutional as applied to her licensing application. Dkt. 18 at 14. This argument is

4   based on her claim that WAC 308-125-070's 2000-hour requirement (in the past seven

5   years) is unconstitutional as a matter of law because it is more stringent than its federal

6   counterpart, FIRREA. *Id*. She argues (but does not demonstrate) that FIRREA imposes a

7   1000-hour requirement, with no time limit.

8           But Immelt has not established that FIRREA, much less the United States

9   Constitution, requires the Washington DOL to accept 1000 hours of relevant experience

10  over an unlimited time to sit for the licensing examination. FIRREA expressly does *not*

11  prohibit states from imposing requirements that are more stringent than those outlined in

12  the federal act:

13          [T]he term "State licensed appraiser" means an individual who has satisfied
            the requirements for State licensing in a State or territory whose criteria for

14          the licensing of a real estate appraiser currently ***meet or exceed*** the
            ***minimum criteria issued by the Appraisal Qualifications Board*** of The

15          Appraisal Foundation for the licensing of real estate appraisers.

16  12 U.S.C. § 3345(c) (emphasis added). It does not purport to preempt more stringent state

17  law requirements; it sets forth a minimum and expressly permits states to impose more

18  stringent requirements.

19          Immelt's core complaint is that Washington's appraiser qualification requirements

20  should have been relaxed when FIRREA's requirements were relaxed. She claims that

21  the Washington statute authorizing the Washington Regulations, RCW 18.140.030(15),

22  permits the Director (of DOL) *only* to "do all other things necessary to . . . minimally

1    meet the requirements of federal guidelines regarding state certification or licensure or

2    appraisers[.]" Dkt. 18 at 6. She argues that Defendants "vastly exceeded the rule making

3    authority of the Director of the Appraisal program" and that they used the regulations to

4    "deprive [her] of her right to take the licensing test." *Id.* at 7.

5         It is not at all clear that this state statute can be read to authorize only regulations

6    which minimally meet the federal requirements or that any regulation purporting to

7    impose more stringent requirements exceeds the statutory rule-making authority. But it is

8    clear that Immelt's complaints about the regulations are based on state law; they are not a

9    matter of constitutional, or even federal, law. Violation of a state statute is not the basis

10   for a § 1983 claim, or for a claim under *Ex Parte Young*, 209 U.S. 123, 159–60 (1908),

11   seeking to enjoin an official from violating the constitution or federal law.

12        Immelt has not established that, as a matter of law, either WAC 308-125-070(1) or

13   WAC 308-125-075(4) was applied unconstitutionally to her licensing application, or that

14   either Defendant violated her constitutional rights by determining that her experience log,

15   and thus her application, was incomplete. Her Motion for Summary Judgment on her "as

16   applied" constitutional challenge to the regulations is **DENIED**.

17   **D.    Immelt is not entitled to summary judgment on her official capacity claims.**

18        Immelt's primary claims relate to the WAC regulations themselves, but she sued

19   Sharp and McCowan in their official capacities, seeking money damages and an

20   injunction requiring them to allow her to sit for the appraiser examination. She now seeks

21   summary judgment on her official capacity claims against Sharp and McCowan. *See* Dkt.

22

1  26 at 2 n.3 ("the complaint clearly and unmistakably asserts that they were sued in their

2  official capacity").

3      Sharp and McCowan argue that Immelt's official capacity claims seeking damages

4  are effectively damages claims against the state and that such claims are barred by the

5  Eleventh Amendment. Dkt. 24 at 5. They argue that such claims are in effect claims

6  against the State itself, and the State is not a "person" for purposes of 42 U.S.C. § 1983.

7      Section 1983 provides a remedy for the violation of a person's constitutionally

8  protected rights by any *person* acting under color of state law. 42 U.S.C. § 1983; *see also*

9  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 683 (1978). The employee

10  actor—the *person*—who causes a constitutional violation is individually liable to the

11  plaintiff under § 1983. But there is no respondeat superior liability under § 1983; a

12  municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

13      State officials in official capacity suits for damages assume the identity of the

14  government that employs them because an award would require payment of funds from

15  the state treasury, thus they are not a "person" under § 1983. *See Hafer v. Melo*, 502 U.S.

16  21, 27 (1991); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A]

17  suit against a state official in his or her official capacity is not a suit against the official

18  but rather is a suit against the official's office.").

19      In enacting Section 1983, Congress did not override the State's Eleventh

20  Amendment immunity to actions for damages in federal court. *Will*, 491 U.S. at 69. A

21  state can waive its Eleventh Amendment immunity. *McLaughlin v. Bd. of Trs.*, 215 F.3d

22  1168, 1170 (10th Cir. 2000). However, a state's general waiver of its sovereign immunity

1    is not considered a waiver of the Eleventh Amendment immunity. *Leer v. Murphy*, 844

2    F.2d 628, 632 (9th Cir. 1988). The Eleventh Amendment precludes § 1983 actions for

3    damages against a state in federal court. *Doe v. Lawrence Livermore Nat'l Lab'y,* 131

4    F.3d 836, 839 (9th Cir. 1977).

5           Immelt's "official capacity" Section 1983 damages claims against Sharp and

6    McCowan are barred by the Eleventh Amendment, and her motion for summary

7    judgment on those claims is **DENIED**.

8           In her Reply, Immelt clarifies that her "official capacity" claims seek only

9    prospective, injunctive relief; not money[6] damages, and are thus cognizable. *See* Dkt. 26

10    at 2 n.3. Magistrate Judge Creatura's Report and Recommendation noted that,

11    notwithstanding the Eleventh Amendment, one may assert claims against officials in their

12    official capacity when she is seeking prospective injunctive relief. Dkt. 4 at 3 (citing

13    *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 818 (9th Cir. 2001)).

14           Although a state official acting within the scope of their valid authority normally

15    enjoys sovereign immunity, if the official is enforcing a law that conflicts with federal

16    authority, they are "stripped of [their] official or representative character." *Ex Parte*

17    *Young*, 209 U.S. at 159–60. A court may therefore issue a declaratory judgment and

18    enjoin official conduct in conflict with the Constitution or congressional statutes. *Id*. at

19    155–56; *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 (9th Cir. 2002)

20    (explaining that *Ex Parte Young* extends to claims for declaratory relief).

21

22         [6] Immelt's Complaint, Dkt. 6, seeks $300,000 in damages, and it was filed after this Court adopted the Magistrate Judge's Report and Recommendation, Dkt. 5.

Immelt's claims against Sharp and/or McCowan are thus arguably cognizable under *Ex Parte Young*, and not subject to Eleventh Amendment Immunity, to the extent she seeks to enjoin the proper official's unconstitutional conduct. But, as is discussed above, Immelt has failed to establish that the officials she seeks to enjoin have acted unconstitutionally. Immelt's Motion for Summary Judgment on her official capacity injunction claim is **DENIED**.

**E.     Sharp and McCowan are entitled to Qualified Immunity on any claims against them personally.**

It is not clear whether Immelt asserts damages claims against Sharp and McCowan in their personal capacities. If and to the extent she does, Defendants argue they are entitled to qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

1      Qualified immunity protects officials "who act in ways they reasonably believe to

2  be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). "The

3  reasonableness inquiry is objective, evaluating 'whether the officers' actions are

4  "objectively reasonable" in light of the facts and circumstances confronting them, without

5  regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539,

6  549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the

7  officer's decision is constitutionally deficient, qualified immunity shields her from suit if

8  her misapprehension about the law applicable to the circumstances was objectively

9  reasonable. *See Brosseau*, 543 U.S. at 198. Qualified immunity "gives ample room for

10  mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*,

11  502 U.S. 224 (1991).

12      Defendants did not accept Immelt's application because she did not have 2000

13  hours of relevant experience in the preceding seven years. Immelt has not established that

14  the WAC regime supporting that decision was unconstitutional, and she has not

15  addressed or demonstrated that defendants' the decision violated "clearly established"

16  constitutional law.

17      There is no case holding or suggesting that the imposition of a more stringent

18  experience requirement is unconstitutional. Sharp and McCowan are entitled to qualified

19  immunity on any damages claim Immelt asserts against them personally. If and to the

20  extent Immelt seeks summary judgment on this claim, it is **DENIED**.

21                                    * * *

22

ORDER - 13

Plaintiff Immelt's Motion for Summary Judgment, Dkt. 18, is **DENIED**. Her

motion to seal, Dkt. 20, is **GRANTED**. Defendants' Motion for Summary Judgment,

Dkt. 32, will be addressed in a separate Order.

**IT IS SO ORDERED.**

Dated this 7th day of January, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 14