1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHANNA M. IMMELT,

                        Plaintiff,

        v.

DEE SHARP, et al.,

                        Defendants.

CASE NO. C20-5617 BHS

ORDER

13      THIS MATTER is before the Court on the following motions: pro se plaintiff

14  Johanna Immelt's "Recusal Inquiry," Dkt. 37; Immelt's Motion for Reconsideration, Dkt.

15  38, of the Court's Order, Dkt. 34, denying her motion for summary judgment, Dkt. 18;

16  and Defendants' Motion for Summary Judgment, Dkt. 32. The matters are addressed in

17  turn.

18  **A.    Immelt's Recusal Inquiry is Baseless.**

19      Immelt's "recusal inquiry" is in the form of a lengthy letter to the Court and to

20  opposing counsel, following the Court's Order denying Immelt's summary judgement

21  motion, Dkt. 18, on her primary claim that Washington's regulatory scheme regarding

22  appraiser licensing is unconstitutional on its face and as applied to her.

1       The Court's Order was dated January 7, 2022. On December 27, 2021, Defendants

2 filed their own motion for summary judgment, arguing (as they had in response to

3 Immelt's motion) that the regulations are not unconstitutional either facially or as applied

4 to Immelt. Dkt. 32; *see also* Defendants' Response to Immelt's Motion, Dkt. 24. They

5 also reiterated their argument that, to the extent Immelt was suing Sharp or McCowan

6 personally, they were entitled to qualified immunity.

7       Immelt asserts that she has "a very serious recusal concern that improper ex parte

8 communications may have precipitated the motion." Dkt. 37 at 1. She boldly asserts that

9 the Court has an "ethical obligation" to "confirm or deny under oath" whether such

10 communications took place. *Id*. at 1, 2, and 7.

11       Immelt's suspicions were apparently triggered by the fact that the Court issued its

12 Order denying her motion 11 days after Defendants filed their motion. She concedes she

13 has no objective evidence of anything, but contends that based on this timing and the

14 similarity of the Defendants' arguments, it "would appear" that the filing of Defendants'

15 motion "occurred as direct result of some form of prohibited ex parte communication

16 between the Court and/or its staff and the Defense and/or its staff." Dkt. 37 at 2. She

17 asserts it is "critical" that she be "given a fair trial" and not be "ramrodded out of Court

18 by backroom dealings." *Id*. Immelt effectively accuses the Court and defense counsel of

19 conspiring against her.

20       The accusation is baseless, insulting, and absurd. It is hardly unusual that

21 Defendants' motion would be based on the same arguments they made in response to

22

1   Immelt's motion; this happens every day, in every court. The timing was purely

2   coincidental.

3         Immelt has pointedly not asked the Court to recuse itself, indicating she is

4   "withholding the filing of a formal recusal motion pending sworn representations from

5   the Court and defense counsel" that such communications did or did not take place. Dkt.

6   37 at 1. The Court will not recuse. A federal judge should recuse himself if "a reasonable

7   person with knowledge of all the facts would conclude that the *judge's impartiality might*

8   *reasonably be questioned*." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)

9   (emphasis added) (internal quotation omitted); *see also* 28 U.S.C. § 144; 28 U.S.C. § 455.

10  This objective inquiry is concerned with whether there is the appearance of bias, not

11  whether there is bias in fact. *See Preston v. United States*, 923 F.2d 731, 734 (9th Cir.

12  1991); *see also United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980)). In the

13  absence of specific allegations of personal bias, prejudice, or interest, neither prior

14  adverse rulings of a judge nor his participation in a related or prior proceeding is

15  sufficient to establish bias. *Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1981).

16  Judicial rulings alone "almost never" constitute a valid basis for a bias or partiality

17  motion. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

18        The Court has not had any ex parte communications with the defendants or their

19  attorneys and has no bias or prejudice against Immelt. She has provided nothing which

20  would lead a reasonable person to believe there is even the appearance of bias. It does not

21  objectively "appear" that the timing or content of Defendants' motion and the Order is

22  evidence of bias, of ex parte communications, or of a conspiracy. There is absolutely no

1   evidence supporting Immelt's serious accusation that the Court violated a fundamental

2   judicial principle and is corrupt. This Court will not address it further.

3   **B.      Immelt's Motion for Reconsideration is Denied.**

4          The remainder of Immelt's recusal inquiry letter accuses Defendant Dee Sharp of

5   "fabricating" various facts and documents, thus creating a question of fact precluding

6   summary judgment. Dkt. 37 at 2–8. Her subsequent Motion for Reconsideration repeats

7   these accusations—it uses some form of the word "fabricate" 16 times, and "lie" seven

8   more. *See* Dkt. 38.

9          But Immelt's complaint does not allege that Sharp lied, or even that she

10  inaccurately but mistakenly counted Immelt's hours. Instead, Immelt specifically alleges

11  that WAC 308-125-070(1) (requiring 2000 hours of experience within seven years to sit

12  for the appraiser examination) and 308-125-075(4) (a "catch-all" providing that appraisal

13  work not assigned an hourly maximum elsewhere in the regulation will be determined on

14  a "case-by-case" basis) are unconstitutionally vague on their face, and as applied to her:

15          On its face, WAC 308-125-075 violates Plaintiff's 14th Amendment Equal
            Protection and Due Process rights due to vagueness. Further, as the
16          regulation was applied to Plaintiff, a State Licensed Real Estate Appraiser
            Trainee, by the Defendants in the instant case, the regulation and its
17          application prevented Plaintiff from sitting for the State Appraiser
            Licensing Exam precluding her from being employed in the field in which
18          she has been educated, trained and worked in for the past approximately 20
            years.
19
    Dkt. 6 at 4.
20
           Immelt's complaint explained that the "heart of the dispute" was the hourly credit
21
    she claimed for one particularly complex appraisal assignment, a "Grade-20,"
22

1    $150,000,000+ estate owned by an undisclosed but apparently well-known local

2    billionaire. *Id.* at 6–7. Immelt's primary claim was that she should have earned more than

3    the 12 hours that WAC 308-125-075(1)(b) permits for narrative residential reports,

4    because the property was not an ordinary residence; it was more akin to a commercial

5    property. She asserted she should have instead received 80 hours' credit applicable to

6    commercial properties under WAC 308-125-075(1)(l), and that Sharp should have used

7    her discretion to credit her that number of hours under the catch-all provision, WAC 308-

8    125-075(4). *Id.* at 7–9. She claimed that that refusal was a violation of her Due Process

9    right to pursue the occupation of her choosing. *Id.* at 5.

10       Immelt's summary judgement motion, Dkt. 18, affirmatively asserted that the facts

11   were "undisputed." Dkt. 18 at 3. She again argued that Defendants violated her

12   constitutional rights by failing to credit her 80 hours for her work on the Grade 20

13   appraisal under the catch-all provision, WAC 308-125-075(4). *Id.* She argued that the

14   catch-all provision has no "standards" at all and is thus unconstitutional, both facially,

15   and as applied to her. Dkt. 18 at 13.

16       Defendants' Response, Dkt. 24, argued that (1) Immelt's damages claim against

17   them was barred by the Eleventh Amendment, (2) the catch all provision was not

18   unconstitutionally vague, and (3) if and to the extent Immelt asserted claims against them

19   personally under 42 U.S.C. § 1983, they were entitled to qualified immunity.

20       Immelt's Reply asserted that "WAC 308-125-075 (4) is unconstitutionally vague

21   in its entirety." Dkt. 26 at 1 and 4–7. It characterized Defendants' Eleventh Amendment

22   argument as the "reddest of herrings" because, she claimed, she sought *only* an

1    injunction[1] requiring Defendants to permit her to sit for the licensing examination. *Id*. at 2

2    n.3. She called Defendants' claim of qualified immunity "equally specious" because she

3    "clearly and unmistakably" "never asserted" any claim that Sharp or McCowan were

4    personally liable for their conduct; again, she claims, she sought only an injunction

5    requiring them to let her take the exam. *Id*. Immelt argued that the 2000-hours

6    requirement exceeded the Department of Licensing's rule-making authority because

7    federal law, the Financial Institutions Reform, Recovery, and Enforcement Act

8    ("FIRREA"), imposes only a 1000-hour requirement, with no time limit. *Id*. at 2 n.2. She

9    asked the Court to enter an order "declaring WAC 308-125-075 void for vagueness on its

10   face," and, "together with WAC 308-125-070, as applied to Plaintiff by these

11   defendants . . . ." *Id*. at 8.

12        The Court denied Immelt's motion, ruling that the regulations were not

13   unconstitutional facially or as applied to her, that her claims against Sharp and McCowan

14   in their official capacities were barred by the Eleventh Amendment, and that if and to the

15   extent Immelt sued them personally, they were entitled to qualified immunity as a matter

16   of law. Dkt. 34 at 12–13.

17        Immelt's motion for reconsideration takes an entirely new tack: Immelt now

18   claims that that Sharp lied about the number of hours on her log as part of a conspiracy to

19   preclude her from taking the test. Dkt. 38 at 2–5. She now argues that she has met the

20

21        [1] Immelt's Complaint sought an Order "requiring the defendants to allow me to sit for the Licensing exam forthwith." Dkt. 6 at 9. It also asked the Court to "enter a judgment for monetary damages, costs and interest in the amount of $300,000 for lost work and business opportunity." *Id*.

22

ORDER - 6

1  2000-hour requirement, and she need not succeed on her claim that that requirement is

2  unlawful in order to prevail. She argues that she only discovered the evidence supporting

3  these allegations on December 27, when Sharp filed a Declaration, Dkt. 33, in support of

4  Defendants' own summary judgment motion. Dkt. 38 at 3–8. She also argues that the fact

5  that the requirement was recently, unanimously lowered to 1000 hours demonstrates that

6  the 2000-hour requirement was illegal. *Id*. at 7.

7          Under Local Rule 7(h)(1), motions for reconsideration are disfavored and will

8  ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b)

9  facts or legal authority which could not have been brought to the attention of the court

10 earlier, through reasonable diligence. The term "manifest error" is "an error that is plain

11 and indisputable, and that amounts to a complete disregard of the controlling law or the

12 credible evidence in the record." Black's Law Dictionary (11th ed. 2019).

13         Reconsideration is an "extraordinary remedy, to be used sparingly in the interests

14 of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*,

15 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted,

16 absent highly unusual circumstances, unless the district court is presented with newly

17 discovered evidence, committed clear error, or if there is an intervening change in the

18 conrolling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

19 873, 880 (9th Cir. 2009). Neither the Local Civil Rules nor the Federal Rules of Civil

20 Procedure, which allow for a motion for reconsideration, is intended to provide litigants

21 with a second bite at the apple. A motion for reconsideration should not be used to ask a

22 court to rethink what the court had already thought through—rightly or wrongly. *Defs. of*

*Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *Haw. Stevedores, Inc. v. HT & T Co*., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Immelt's Motion for Reconsideration does not address this standard, and it does not meet it. She argues she has new facts, but her new allegations—relating to Sharp's "lies" about how many hours Immelt had logged—do not address any claim asserted in her complaint, or in the motion she asks the Court to grant upon reconsideration. The facial constitutionality of a regulation does not turn on the credibility of one of the state actors charged with enforcing it. Immelt's "new evidence" that Sharp (and McCowen) are no longer in their respective positions at the Department of Licensing ("DOL") is similarly not relevant to any issue Immelt raised in her complaint or in either of her motions.

Immelt's reliance on the fact that DOL has since lowered the requirement to 1000 hours is also misplaced. She asserted federal claims in this Court, alleging that the regulations were facially unconstitutional, and unconstitutional as applied to her. She argued she has a constitutional due process right to the occupation of her choice, but she does not have a constitutional right to the DOL's compliance with a state law regarding the number of hours required to sit for the exam. Immelt's claim that the regulations

exceeded the DOL's rule-making authority under state law is a state law claim, not a

constitutional claim under § 1983. Her new claims that Sharp lied in a conspiratorial

effort to preclude her from taking the examination were not pled, Sharp's testimony was

not the basis for the Court's prior ruling, and the conclusory claim that Sharp lied about

the hours Immelt had actually earned is not enough to warrant summary judgment in

Immelt's favor.

Immelt's Motion for Reconsideration, Dkt. 38, is DENIED.

## C.     Defendants' Motion for Summary Judgment is Granted.

Sharp and McCowan seek summary judgment on each of Immelt's claims against

them, based largely on the same arguments they made in opposing Immelt's motion on

the same issues. These include Eleventh Amendment and qualified immunity, and the

argument that the regulations are not unconstitutional as a matter of law, either facially or

as applied to Immelt. This consistency of argument is not unusual, and it is not evidence

of a conspiracy.

Summary judgment is proper if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is "no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in

that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

exists where there is sufficient evidence for a reasonable factfinder to find for the

1    nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

2    presents a sufficient disagreement to require submission to a jury or whether it is so one-

3    sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party

4    bears the initial burden of showing that there is no evidence which supports an element

5    essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6    Once the movant has met this burden, the nonmoving party then must show that there is a

7    genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

8    establish the existence of a genuine issue of material fact, "the moving party is entitled to

9    judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that

10   the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife*

11   *Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-

12   movant must then produce concrete evidence, without merely relying on allegations in

13   the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248

14   (1986).

15        Immelt reiterates that she did not sue Sharp or McCowan in their personal

16   capacities; she sued them in their official capacities. Furthermore, she does not seek

17   damages, she seeks an injunction requiring them to permit her to sit for the examination.

18   But she now alleges that they are not in their positions at DOL; this Court could not

19   require them to permit Immelt to sit for the examination even if the claim were otherwise

20   viable.

21        Immelt correctly points out that one may assert a § 1983 claim against a state

22   official acting in her official capacity—notwithstanding the state's Eleventh Amendment

1    immunity—to the extent she seeks to prospectively enjoin that official's unconstitutional

2    conduct. Dkt. 41 at 7 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Although a state

3    official acting within the scope of their valid authority normally enjoys sovereign

4    immunity, if the official is enforcing a law that conflicts with federal authority they are

5    "stripped of [their] official or representative character." *Ex Parte Young*, 209 U.S. at

6    159–60. A court may therefore issue a declaratory judgment and enjoin official conduct

7    in conflict with the Constitution or congressional statutes. *Id.* at 155–56.

8           Defendants argue that while Immelt has argued that the regulations are

9    unconstitutional and has alleged a federal § 1983 claim, her complaints are only about the

10   meaning of state law. As discussed above, the Court agrees: whether Sharp should have

11   allowed Immelt 80 hours' credit for the Grade 20 Property under WAC 308-125-075(4)

12   is not a constitutional claim; it is a matter of state law. Immelt may have had a right to

13   appeal the administrative decision, but she has not asserted a viable constitutional claim.

14          Even if Immelt's claim for an injunction could be a route around Eleventh

15   Amendment immunity, she still must establish that some state official[2] is violating the

16   constitution. Immelt argues only that she has a due process right to the occupation of her

17   choice. Dkt. 41 at 4 (citing *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (the

18   "Fourteenth Amendment's Due Process Clause includes some generalized due process

19   right to choose one's field of private employment.")). Her complaint alleges only that the

20   _____

21          [2] Immelt not only asserts that the 2000-hour requirement has been halved, she asserts that
     Sharp is no longer employed at the DOL. She is no longer a state official who can be enjoined
22   from acting unconstitutionally, even if the Court concluded that Immelt was otherwise entitled to
     such relief.

1  regulations are unconstitutional, and that Sharp should have given her more credit (under

2  the very regulation Immelt asks the Court to declare unconstitutional). Immelt does not

3  articulate how Sharp is violating her constitutional rights, or how an injunction would

4  remedy some ongoing constitutional violation. Immelt concedes that she is asserting no

5  other claim.

6       Defendants' Motion for Summary Judgment is GRANTED.

7       The Clerk shall enter a JUDGMENT and close the case.

8       **IT IS SO ORDERED.**

9       Dated this 28th day of February, 2022.

10

11

12       BENJAMIN H. SETTLE
          United States District Judge

13

14

15

16

17

18

19

20

21

22